## HODSON v. GREAT ATLANTIC & PACIFIC TEA CO.

### No. 3825.

District Court, W. D. Missouri, W. D.

May 24, 1946.

Harry B. Jenkins and Fred Bredehoft, both of Kansas City, Mo., for plaintiff.

Clay C. Rogers, of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is a suit for damages arising from an alleged assault upon the plaintiff by the manager of one of the defendant's grocery and food stores in Kansas City. A jury was waived and the case was tried to the court sitting as a jury.

It is alleged in the complaint "That on September 1, 1945, at about 6:00 p. m., this plaintiff * * * was assaulted and attacked by the manager of said store, without provocation or cause; * * * when he was in said store as an invitee and making purchases."

The defendant admitted the ownership and operation of the grocery and food store at the place mentioned in the complaint but denies all of the other allegations.

Plaintiff testified: That on September 1, 1945 he went into the defendant's store at Swope Parkway and Prospect Avenue, in Kansas City, Jackson County, Missouri, to make a purchase of meat; and bought 50 cents worth and such amount was marked on his package; that he lacked sufficient points (a then-requirement under government regulations), but supposed that he could supply them later and so informed the cashier to whom payment was made; that after he had gone out of the store he was stopped by the manager who took the merchandise out of his hands and struck him on the left side of the head with such force as to cut an artery over his left eye; that he bled profusely and later called for his sons to come and take him home; that the manager cursed him before striking the blow and that he in turn cursed the manager; and that, as a result of his injury, he was disabled and for some time could not pursue his regular vocation and expended considerable sums or obligated himself to do so, for medical treatment.

Witnesses on behalf of the plaintiff testified concerning his condition after the alleged assault and the disabilities that accrued to him by reason of such assault. Plaintiff said he was not intoxicated at the

time of the assault and this was confirmed by his witnesses. According to the plaintiff the assault was committed because he had failed to deliver adequate points required by government regulations.

On the part of the defendant, the manager testified that upon complaint of the cashier he followed the plaintiff out of the store, returned to him 45 cents, the amount actually paid by plaintiff and took from him the meat or merchandise he had purchased. The manager said that the price marked on the package was 89 cents. According to his evidence the plaintiff was intoxicated. After recovering the meat purchased and after restoring to the plaintiff the 45 cents paid, the manager testified that the plaintiff called him vile names and thereupon the manager slapped plaintiff and, in doing so, scratched his face near the left eye. Subsequently some one came, presumably a son, and asked the manager why he had hit "my old drunken dad." The witness said he apologized for having hit the plaintiff and asserted on the witness stand that he had not, in turn, as testified by plaintiff, called the plaintiff names. Two customers were in the store at the time. Both said they noticed the plaintiff and his conduct in making his purchase. One of them said the plaintiff was intoxicated. They observed the manager go outside of the store where he took the merchandise from the plaintiff and returned his money and subsequently slapped him. One of the witnesses said that the manager slapped the plaintiff with his open hand after the plaintiff had called him vile names. On cross-examination one of the witnesses for the defendant said that the plaintiff followed the manager up to the store where he was slapped after calling the manager a vile name. Employees of the store, including the cashier, testified with respect to the transaction in the store and their testimony was sharply at variance with that of the plaintiff. They said that he did not put the package down on the counter with the purchase price as required, but that he put money on the counter, and walked out with the package without permitting the cashier to see what the article or price was. All of the witnesses for the defendant said that there was very little blood on plaintiff's face. Moreover, several witnesses said that they saw the plaintiff follow the manager back toward the store, where he was slapped. For instance, Marie Ayres, an employee of the store, said both on direct and cross-examination that the plaintiff followed the manager back to the store before he was slapped by the manager. Ernest Ayres, the husband of Marie (a nephew of the plaintiff), was in the store. He said that his uncle appeared to have been drinking and had tried to get out of the store without passing by the cashier. He never saw what happened on the outside, but, later in the evening, namely, at about 8 p. m., one of plaintiff's sons came in and asked the manager, "What's the idea of beating up a poor, old drunken man?" At that time, he said, the plaintiff was on the outside in an automobile and twice attempted to get out of the car but was put back in the car each time. Other witnesses testified to the same effect. In fact, police officers came to the store about 8 o'clock p. m. and saw and talked to the plaintiff.

The plaintiff testified, and he was corroborated by members of his family, that he was taken home immediately after the episode and was not at the defendant's place of business at 8 o'clock in the evening.

Other facts, if they may become pertinent, will be stated in the course of this memorandum opinion.

1. It is the law that the master is liable for the wrongful conduct of a servant, including assault by a servant upon a third party in all of those cases where and when the servant is in the actual discharge of or attempting to promote the master's business. Milazzo v. Kansas City Gas Co., Mo.Sup., 180 S.W.2d 1, loc. cit. 5, and cases therein cited.

On the other hand, it is the rule supported by the authorities that the master is not liable if the assault "was not intended or made to accomplish or promote the defendant's business intrusted to" the servant. Milazzo v. Kansas City Gas Co., supra, 180 S.W.2d loc. cit. 3.

In the above case many authorities were collated in support of the two situations mentioned. Apparently there is no con-

trariety of opinion on the above propositions.

■ 2. It would follow from the foregoing that, if the manager of the store assaulted the plaintiff while in the act of recovering the meat or merchandise purchased by the plaintiff and in restoring to plaintiff the money paid by him, then the defendant would be liable. On the other hand, if the meat or merchandise had been taken from the plaintiff and his money restored to him, and, if, thereafter, the manager assaulted plaintiff because the plaintiff called him a vile name, then the defendant would not be liable.

3. From the foregoing it is obvious that a decision of this case must be made upon the facts in evidence as believed to exist by the trier of the facts. Plaintiff alone testified in support of his version of the transaction. He said he was not intoxicated and that he was covered with blood and suffered great disabilities from the injuries sustained by him. He said that he was immediately taken home and put to bed.

Numerous witnesses on behalf of the defendant said that the plaintiff was intoxicated, that, if taken home, he returned to the place two hours later, and that, at both times, he was under the influence of liquor. The police so testified. Several witnesses corroborated the manager in his evidence that the assault was committed after the merchandise had been taken from the plaintiff and after his money had been restored to him. Moreover, several witnesses said that the plaintiff followed the manager back to the store before the manager slapped him.

The evidence on the part of the plaintiff was not definite as to the exact time in the episode when he was slapped by the manager. His testimony warrants the inference, if believed, that it occurred when the meat was taken and plaintiff's money restored. The evidence for the defendant was definite that the assault was made after the recovery of the merchandise and the return of the purchase money.

The testimony on behalf of the defendant, therefore, seems the more reasonable, the more convincing, and the more satisfying to the mind. It was obvious that the plaintiff, as a witness, endeavored to exaggerate his injuries and to minimize his conduct in the store at the time he had his transaction with the cashier.

■ A trier of the facts could not reasonably or properly say that the many witnesses who testified for the defendants, many of them disinterested, were not truthful. Two hours after the episode the police said that the odor of alcohol was very noticeable on the breath of the plaintiff. The trier of the facts would be justified in concluding that he was in fact intoxicated, as asserted by a large array of witnesses.

Such being true, he would not remember or wholly comprehend what had actually taken place. It is the duty of the trier of the fact to resolve a factual question upon the theory that all of the parties were endeavoring to tell the truth. There is a good reason, therefore, for the weakness in the plaintiff's testimony, but no reason to challenge the veracity of the several witnesses for the defendant who saw the event in the same way, and, because of their respective situations, could not very well cooperate in framing the stories told by them. Each one corroborated the other.

■ In view of the facts, the court finds that the unfortunate assault upon the plaintiff was made by the manager for the defendant, not in his capacity as manager, but that it was an independent assault made to avenge the opprobrious epithets applied to him by the plaintiff. Beyond any reasonable controversy the purpose of the assault was to avenge abusive language applied to the manager personally and had no connection with his employer's business.

The verdict of the court sitting as a jury should be for the defendant and it will be so ordered.